## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 13-CR-0141-CVE |
| | ) | |
| LAWRENCE DAVID PEOPLES, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Now before the Court is Defendant's Motion to Suppress Evidence (Dkt. # 15). Defendant Lawrence David Peoples asks the Court to suppress a firearm and ammunition seized by the Tulsa Police Department on April 5, 2013. The government has filed a response in opposition to defendant's motion. Dkt. # 18. On August 26, 2013, the Court held an evidentiary hearing and heard the testimony of Tulsa Police Department (TPD) Officers Sandra Dunn, Paul Madden, and Shane Goben.

## I.

On April 5, 2013, TPD Officers Dunn and Madden were assigned to the Mingo Valley Division and were on patrol near 11th Street and South Garnett Road in Tulsa, Oklahoma. Dunn was an officer-in-training at the time and Madden was her field training officer. Madden's role was to observe Dunn's performance. At approximately 3:00 a.m., Dunn observed a traffic violation and initiated a traffic stop near a Quik Trip convenience store located at 1302 South Garnett Road. TPD Officer Shane Goben was backing Dunn and Madden at the traffic stop. During the traffic stop, all three officers observed a vehicle in the parking lot of the Quik Trip that was parked too far from a gas pump to get gas and it was partially blocking traffic in the parking lot. They had a clear line of

sight to the parking lot and the parking lot was well lighted.  At approximately 3:20 a.m., Dunn and

Madden completed the traffic stop and drove to the Quik Trip parking lot, and Goben also drove his

vehicle to the Quik Trip parking lot.  The vehicle they had previously observed had not moved, and

it was facing the front door of the Quik Trip store.  Dunn and Madden approached the passenger side

of the vehicle and Goben went to the driver's side of the vehicle.  The vehicle's engine was running

and it was in park, and there a person who appeared to be asleep in the driver's seat.  The officers

were concerned for the welfare of the occupant of the vehicle and for harm that could be caused by

the vehicle.  In particular, Madden testified that a driver who is intoxicated or who has a medical

condition may overreact when waking up, and the vehicle was running and facing the front door of

the Quik Trip store.

Goben announced the presence of TPD officers and attempted to wake the person by

knocking on the driver's side window, but person did not wake up.  After attempting to get the

person's attention and waiting for a few seconds, Goben opened the driver's side door and Madden

opened the passenger side door, and either Goben or Madden removed the keys from the ignition.[1]

Goben tried to shake the person and continued to speak to him in a level tone of voice, but the

person still did not wake up.  Goben decided to move the person's legs toward the driver's side door,

because he was unresponsive to attempts to wake up and getting the person on his feet could help

him wake up.  When he moved the person's legs, Goben observed a pistol on the floorboard and said

to Madden, "Bro, we've got a gun on the floor."  The pistol was sticking out from underneath the

driver's seat and about half of the pistol was in plain view.  Goben removed the pistol from the

_____

[1]        Dunn and Madden testified that Goben took the keys from the ignition and turned off the
vehicle.  However, Goben could not recall if he or Madden took the keys.

2

vehicle and hand it across the top of the vehicle to Madden. Madden handed the pistol to Dunn, and Dunn walked toward the rear of the vehicle. The pistol was a Hi-Point 9mm semiautomatic pistol and it was chamber-loaded with four additional rounds in a magazine. Dunn removed the ammunition from the gun and secured it in her patrol car.

Madden went over to the driver's side of the vehicle to assist Goben, and they removed the person from the vehicle and "more vigorously" attempted to wake him up. They succeeded in waking up the person and placed him in handcuffs for officer safety. Goben and Madden smelled alcohol on the person's breath, and the person was slurring his speech and he was disoriented. The person was so unsteady on his feet that the officers decided not to conduct any field sobriety tests. The officers subsequently identified the person as Peoples. A subsequent records check revealed that Peoples had a felony conviction and five outstanding misdemeanor traffic warrants. Peoples has been charged with possession of a firearm after prior felony conviction in violation of 18 U.S.C. § 922(g)(1).

## II.

Defendant argues that his Fourth Amendment rights were violated during his encounter with police, because he was not posing a danger to any person and there was no need for police to perform a community caretaking function under the circumstances. The Fourth Amendment guarantees citizens the right "to be secure in their persons . . . against unreasonable searches and seizures." "[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." Terry v. Ohio, 392 U.S. 1, 16 (1968). "Reasonableness under the Fourth Amendment 'depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers.'" United States v. King, 990

F.2d 1552, 1559 (10th Cir. 1993) (quoting United States v. Brignoni-Ponce, 422 U.S. 873, 878 (1975)). In balancing these interests, the Supreme Court has held that arrests, being the most intrusive of Fourth Amendment seizures, are reasonable only if supported by probable cause. Novitsky v. City of Aurora, 491 F.3d 1244, 1253 (10th Cir. 2007); United States v. Davis, 94 F.3d 1465, 1468 (10th Cir. 1996). Investigative detentions, which are Fourth Amendment seizures of limited scope and duration, are lawful if they are supported by a reasonable suspicion that the detained individual is engaged in criminal activity. Novitsky, 491 F.3d at 1253. In addition, "officers may effect a brief non-investigatory detention in the exercise of their community caretaking functions, regardless of suspected criminal activity, when articulable facts indicate the need 'to assure the safety of the public and/or the individual.'" Id. at 1253 (quoting United States v. King, 990 F.2d 1552, 1560 (10th Cir. 1993)).

The government argues that TPD officers were performing a community caretaking function when they encountered defendant, and the officers could effect a limited entry into the vehicle to determine if defendant needed medical attention. The community caretaking function is "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." United States v. Garner, 416 F.3d 1208, 1212 (10th Cir. 2005) (quoting Cady v. Dombrowski, 413 U.S. 433, 441 (1973)). An officer's belief that a person needs medical attention, if based on specific and articulable facts, may be a reason to initiate an encounter under the community caretaking function. Id. at 1214. Police officers are permitted to briefly detain a person while performing a community caretaking function, but such a detention:

> must be based upon specific and articulable facts which reasonably warrant an intrusion into the individual's liberty. Additionally, the government's interest must outweigh the individual's interest in being free from arbitrary governmental

interference. Finally, the detention must last no longer than is necessary to effectuate its purpose, and its scope must be carefully tailored to its underlying justification.

Storey v. Taylor, 696 F.3d 987, 993 (10th Cir. 2012) (quoting Garner, 416 F.3d at 1213). The community caretaking exception is generally limited to cases involving automobile searches. United States v. Maddox, 388 F.3d 1356, 1366 n.5 (10th Cir. 2004).

Defendant argues that police had no right even to approach the vehicle, because police had received no calls about the vehicle or defendant's behavior and defendant did not pose a threat to anyone. He claims that the police were "interfering" and they had no reason to exercise the community caretaking function under the circumstances.[2] At the inception of the encounter with defendant, all three police officers testified that they approached defendant's vehicle without any intention of investigating a crime but, instead, they were concerned for the welfare of the person inside of the vehicle and the public's safety. The Court finds that this testimony is credible and there is no evidence that police were attempting to investigate a crime when they approached the vehicle. The circumstances described by Dunn, Madden, and Goben could have led a reasonable police officer to believe that a limited inquiry was necessary to ensure the safety of any occupants of the vehicle and the public. In particular, they observed a vehicle parked in an awkward position in a convenience store parking lot and the engine of the vehicle was running, and the vehicle was facing the convenience store. The occupant of the vehicle appeared to be asleep or unconscious, and

---

[2]     Defendant argues that under Novitsky police may exercise their community caretaking function only in response to a call or a request for police assistance. The Court has been unable to find any case suggesting that police may exercise the community caretaking function only when someone has sought assistance from the police, but it is clear that police do not have to "simply walk away" when a person or the public is potentially at risk of harm. Winters v. Adams, 254 F.3d 758 (8th Cir. 2001) (police officers would have been "derelict in their duties" if they had allowed an intoxicated person to remain behind the wheel of a vehicle, even though no crime had actually been committed).

Madden testified that an intoxicated person or a person with a medical condition may overreact when he wakes up. These are specific and articulable facts from which a reasonable police officer could have believed that it was necessary to approach the vehicle to ensure the health and safety of the occupant of the vehicle and the general public.

The Court must also consider if the government's interest outweighed the defendant's interests in being free from "arbitrary governmental interference." Storey, 696 F.3d at 993. The Court has heard the testimony of Dunn, Madden, and Goben, and it is apparent that they attempted to use the least intrusive means possible to get defendant's attention before opening the car door. Goben approached the vehicle from the driver's side, announced the presence of TPD officers, and knocked on the window in an attempt to wake defendant. If defendant had awakened, Goben would not have opened the driver's side door and no intrusion into the vehicle would have been necessary. However, defendant did not wake up and he was sleeping behind the wheel of a vehicle with the engine running. Goben could have reasonably believed that defendant needed medical attention, because defendant was unresponsive to attempts to get his attention. Goben could also have been concerned for the safety of defendant and the public if Goben failed to act, because defendant was sitting behind the wheel of a running vehicle and he did not appear to be in any condition to safely operate a vehicle. Goben opened the driver's side door for the purpose of turning off the vehicle and waking defendant, and he did not open the door to investigate a crime. Although Goben found a firearm in the vehicle, the evidence shows that Goben and Madden opened the doors of the vehicle for purposes entirely unrelated to the investigation of possible criminal activity. The Court finds that the government's interest outweighed defendant's interest in being free from governmental intrusion

and the scope of the police intrusion was reasonable under the circumstances, and defendant's Fourth Amendment rights were not violated during his encounter with the police.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Suppress Evidence (Dkt. # 15) is **denied**.

**DATED** this 26th day of August, 2013.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE